IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ANTHONY WEIMER,<br><br>Plaintiff,<br><br>vs.<br><br>ALAN SCANLON, EXECUTIVE DIRECTOR, GREAT FALLS PRERELEASE SERVS. INC., and CHARLIE MARTIN, GRIEVANCE COORDINATOR, GREAT FALLS PRERELEASE SERVS., INC.,<br><br>Defendants. | CV 24-101-GF-DWM<br><br>ORDER |

Plaintiff Anthony Weimer filed a Complaint alleging retaliation against him at the Great Falls Prerelease Center. (Doc. 2.) The Complaint failed to state a federal claim for relief, but Weimer was granted leave to amend. (Doc. 8.) After a delay, Weimer filed an Amended Complaint. (Doc. 12.) The Amended Complaint also fails to state a claim and is dismissed.

I. SCREENING STANDARD

Section 1915A(b) requires the Court to dismiss a complaint filed by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is

1

frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## II. SCREENING ANALYSIS

### A. Parties

Weimer is proceeding without counsel. He names as defendants Alan

2

Scanlon, Executive Director, and Charlie Martin, Grievance Coordinator, both of Great Falls Pre-Release Services, Inc. (Doc. 2 at 2.)

### B. Allegations

Weimer's Amended Complaint asserts a First Amendment retaliation claim, an Eighth Amendment claim related to his removal from prerelease, and a Fourteenth Amendment "due process" breach of contract claim. (Doc. 12 at 3.) The events giving rise to his claims occurred between February 11 and 26, 2024 at Great Falls Prerelease Center. (Doc. 12 at 4.)

Weimer was a resident at Great Falls Prerelease and intended to file a grievance against one or more individuals there. (Doc. 12-1 at 1.) He understood that the grievance procedure allowed him to file the grievance with someone who was not personally involved in the events. Therefore, he emailed the grievance to Defendant Scanlon on February 11, 2024. *Id.* He got no response, so he emailed it to Scanlon's assistant on February 26. (Doc. 12-1 at 4 – 5.) Scanlon then responded to say that grievances had to go through the grievance coordinator, Defendant Charlie Martin. These emails are attached to Weimer's Complaint. (Doc. 12-1 at 3 – 6.)

That same day, February 26, Martin emailed Weimer to say that Weimer was "being charged by each of the two individuals" against whom Weimer had filed the grievance. (Doc. 12-1 at 1.) The next day, Martin called Weimer when he

3

was away from the center and told him to return to the Prerelease Center. (Doc. 12-1 at 2.) Weimer was arrested by Probation and Parole and placed in Cascade County Detention Center, pending a disciplinary hearing.

Weimer alleges that Defendants breached their contract with him related to handling grievances. (Doc. 12-1 at 2.)

Weimer seeks money damages and the appointment of counsel. (Doc. 2 at 5.)

**C. Analysis**

A claim under 42 U.S.C. § 1983 requires: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a person (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (internal quotation marks omitted). Weimer fails to allege facts that state a claim under this law.

    1. First Amendment Retaliation

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005). "Because direct evidence of retaliatory intent

rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir.2012).

Conclusory, speculative allegations that something was done in "retaliation" are insufficient. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."); *Peoples v. Schwarzenegger*, 402 F. App'x 204, 205 (9th Cir. 2010) (affirming dismissal of plaintiff's "retaliation claim because his conclusory allegations did not connect any defendant's alleged misconduct with the alleged infringement of his First Amendment rights"). A retaliation claim cannot rely solely on an adverse activity following protected speech. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (explaining that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'" (citation omitted)).

Weimer has not sufficiently stated all five elements of a retaliation claim. Presumably, the adverse action taken against him is the loss of his place at the Prerelease. The protected conduct would be the email complaining about staff. But Weimer has failed to plausibly allege that the adverse action occurred *because of* the email, that his First Amendment rights were chilled, or that removal of him did

5

not reasonably advance a legitimate correctional goal, the three remaining elements of the *Rhodes* test. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005).

The allegations of Weimer's Complaint do not clearly state what the content of his protected speech was, but the emails attached to his Complaint are presumably the grievances that he claims are the protected speech. In the February 11, 2024 email sent to Scanlon, Weimer details conflicts he had with non-parties LaToya Matus, Bob Kemp, and David Hadcock, between January 22 and February 9, 2024. (Doc. 12-1 at 5.) He also explains that he was removed from Prerelease (apparently on January 22nd) and put in jail for 11 days, had a disciplinary hearing for breaches of Prerelease rules and refusing to sign the contract that governs Prerelease residence. He returned to the Prerelease sometime before February 5. (Doc. 12-1 at 5.)

This email apparently belatedly reached both Defendants on February 26. (Doc. 12-1 at 3 -4.) Weimer was removed from the Prerelease for a second time on February 27. Thus, Weimer concludes that he was removed from Prerelease because of the content of his earlier email, after it was made known to Scanlon and Martin. (Doc. 12-1 at 1 – 2.) But aside from chronology, he provides no reason to believe that is true. He never explains why he was removed in March, stating only that he was told by Martin that he "was being additionally charged by another employee" of the Prerelease. (Doc. 12-1 at 2.) Without knowing exactly what the

6

charges were, it is impossible to assume they were pretextual. He attaches an email he wrote on March 1, before his removal hearing, in which he hints at further conflict with one of the staff, which suggests ongoing difficulties that postdated his earlier email. (Doc. 12-1 at 3.) But he never connects the dots. Though a relationship in time might lend credence to an allegation of retaliation, there must be some plausible allegation to support that possibility. All Weimer says about the March disciplinary hearing that resulted in his removal is that he was "silenced," and his claim of reprisal was "refused and rejected." (Doc. 12 at 8.) He had a recission hearing before the Board of Pardons and Parole on July 16, 2024, where his claims about retaliation were again rejected, and his parole was rescinded. *Id.*

    Having already had one disciplinary hearing related to rules infraction, the most plausible conclusion about the second hearing is that he had another infraction and was removed for that reason. None of this is alleged in the Complaint, however, and thus, Weimer has not stated a claim that, by sending a complaint about people who are not parties to this lawsuit, he was retaliated against by Defendants Scanlon and Martin. (It is also not clear who made any decision to revoke Weimer's parole/probation; thus, these defendants may not actually be the ones who took "adverse action.")

    Further, Weimer alleges nothing at all about the last two elements of the *Rhodes* test. He does not assert that his speech has been chilled. And, by not

7

explaining anything about his final disciplinary hearing, Weimer fails to plausibly allege that his removal was not for legitimate penological reasons. He has not stated a claim for retaliation.

### 2. Eighth Amendment

Weimer labels his claim for removal from Prelease as an Eighth Amendment claim, but it is more properly construed as a due process claim under the 14th Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted.) Weimer does not plausibly allege such a claim, since the action he claims is cruel and unusual is his removal from Prerelease. Incarceration of a convicted person, without more, is not sufficient to state a claim for violation of the Eighth Amendment.

### 3. Fourteenth Amendment

Weimer asserts that Defendants breached a contract with him and thus violated his due process rights. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not provide a cause of action for violations of state law. *See Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007). Thus, any claim for breach of contract

8

would be a state law claim that this Court may decline to hear under its supplemental jurisdiction, if Weimer otherwise fails to state a federal claim. 28 U.S.C. § 1367(c).

But Weimer may intend to allege that his Prerelease contract created for him a liberty interest protected by the Fourteenth Amendment. (Doc. 12-1 at 2.) "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Engquist v. Oregon Dep't of Agric.,* 478 F.3d 985, 996 (9th Cir.2007) (internal quotation marks omitted). Generally, a procedural due process claim must establish "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *McQuillion v. Duncan,* 306 F.3d 895, 900 (9th Cir. 2002) (citation and quotation marks omitted).

Assuming that a liberty interest has been implicated, Weimer fails to allege that he did not have notice and the opportunity to refute the disciplinary charges. *See Codd v. Velger,* 429 U.S. 624, 627 (1977) ("the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge'"). In fact, he mentions having had three hearings during the period in question. Thus, he had the process he was due and fails to state a claim for a violation of his right to procedural due process.

9

## III. CONCLUSION

The Court has considered whether Weimer's Amended Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune. *See* 28 U.S.C. § 1915A(b). Weimer's allegations are insufficient to state a claim for relief and will be dismissed.

Accordingly, it is HEREBY ORDERED:

1. Weimer's Amended Complaint is DISMISSED for failure to state a claim.

2. The Clerk of Court is directed to close this matter and enter judgment. The Clerk is directed to have the docket reflect that the filing of this matter counts as a strike against Weimer within the meaning of 28 U.S.C. § 1915.

3. The Clerk is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 15th day of April, 2025.

_____
Donald W. Molloy, District Judge
United States District Court